**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OREN D. HOOPAI,
                 *Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE,*
Commissioner, Social Security
Administrator,
                 *Defendant-Appellee.*

No. 05-16128

D.C. No.
CV-04-00076-DAE

OPINION

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
April 19, 2007—San Francisco, California

Filed August 27, 2007

Before: Dorothy W. Nelson and Consuelo M. Callahan,
Circuit Judges, and Cormac J. Carney,** District Judge.

Opinion by Judge D.W. Nelson

---

*Michael J. Astrue is substituted for his predecessor Jo Anne Barnhardt as Commissioner of the Social Security Administration. Fed. R. App. P. 43(c)(2).

**The Honorable Cormac J. Carney, United States District Judge for the Central District of California, sitting by designation.

10623

**COUNSEL**

Harvey P. Sackett of San Jose, California, briefed and argued for the appellants.

Peter D. Keisler of San Francisco, California, briefed and argued for the appellee.

**OPINION**

D.W. NELSON, Senior Circuit Judge:

Oren D. Hoopai ("Hoopai") appeals the district court's summary judgment order upholding the Commissioner of Social Security's denial of his application for disability insurance benefits under Title II of the Social Security Act. Hoopai's alleged disability was based on back pain and depression. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Hoopai is a 50-year-old man with an eleventh grade education and work history as a construction laborer, heavy equipment operator, and truck driver. He asserts that back pain and mental impairments from an on-the-job injury have caused him to be permanently and completely disabled. The Administrative Law Judge ("ALJ") followed the five-stage procedure for evaluating disability claims set forth in 20 C.F.R. § 404.1520. The ALJ held that Hoopai established a prima facie case of disability, that he was not able to perform any

of his past relevant "heavy" work, and that he was limited to "light work." However, the ALJ found under step five that there was a significant number of jobs that Hoopai could perform that were consistent with his age, education, work experience and residual capacity to do light work. The ALJ concluded that Hoopai's condition was not a "disability," as defined in the Social Security Act.

The Social Security Appeals Council denied Hoopai's request to review the ALJ's decision. Hoopai appealed to the district court, in which he argued: (1) the ALJ erred in step five of the evaluation process by not seeking the testimony of a vocational expert to determine the range of work permitted by the claimant's exertional limitations in light of his allegedly severe non-exertional limitation of depression, (2) the ALJ failed to make findings, as required by case law, as to the degree of limitations in each of the functional areas delineated in 20 C.F.R. § 404.1520a - i.e., activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation; and (3) the ALJ erred in not identifying the specific number of purported alternate jobs that existed in the economy that could be performed by Hoopai and in failing to identify the sources that supported his conclusions. The district court found that the ALJ's decision was supported by substantial evidence and was free of legal error. We agree.

## II. STANDARD OF REVIEW

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). The decision of the Commissioner must be affirmed if it is supported by substantial evidence and the Commissioner applied the correct legal standards. *See Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). Substantial evidence is relevant evidence, considering the entire record, which a reasonable person might accept as

adequate to support a conclusion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

### III.   DISCUSSION

The Social Security Regulations establish a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. A claimant must be found disabled if she proves: "(1) that she is not presently engaged in a substantial gainful activity; (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that "in addition to the first two requirements, . . . she is not able to perform any work that she has done in the past." *Id.* Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that "the claimant can perform a significant number of other jobs in the national economy." *Id.* This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

To assist in the step-five determination, the Social Security Administration established the Medical-Vocational Guidelines (the grids), which "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." *Heckler v. Campbell*, 461 US. 458, 461-62 (1983). When the grids match the claimant's qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform." *Id.* at 462. When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, *see* Soc. Sec. Ruling 83-14, 1983 WL 31254

(S.S.A.), or (2) rely on a vocational expert when the claimant has significant non-exertional limitations. *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988).

The ALJ held that Hoopai had established a prima facie case of disability. In particular, Hoopai was deemed to have proven at steps one and two that he was not presently engaged in a substantial gainful activity and that medical evidence demonstrated that the combination of his low back pain and depression was severe within the meaning of the regulations. However, the ALJ held that the combined impairments did not meet or equal one of the specific impairments listed in the regulations as required under step three. At step four, the ALJ found that the claimant had demonstrated that he could not perform his past relevant work, which involved heavy lifting. Instead, Hoopai only had the residual functional capacity to perform light work. At step five, the ALJ relied on the grids as a framework and concluded that there was a significant number of jobs in the national economy that the claimant could perform. Specifically, the ALJ determined that the claimant could perform such jobs as scale operator, street cleaner, silver wrapper and basket filler.

## A.   Vocational Expert

The parties do not dispute the ALJ's determination at steps one through four. Instead, the dispute centers around the ALJ's step-five determination. Hoopai argues that the ALJ erred at step five by assuming the role of the vocational expert and determining what alternative work he believed the claimant could perform, without invoking vocational expert testimony. He asserts that his depression was a significant non-exertional limitation and therefore the ALJ was required, in accordance with Ninth Circuit case law, to seek the testimony of a vocational expert.

[1] The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because

the grids "provide for the evaluation of claimants asserting both exertional and non-exertional limitations." *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986). But the grids are inapplicable "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Hoopai reasons that since the ALJ determined that his depression impairment was severe at step two, then it must constitute a significant non-exertional limitation at step five such that the assistance of a vocational expert is required. This argument lacks merit.

First, at step two, the ALJ never found that Hoopai's depression impairment alone was severe. Instead, the ALJ determined that Hoopai's back pain *and* depression impairments were severe. But even assuming that the ALJ found that the depression impairment alone was severe, a step-two determination that a non-exertional impairment is severe does not require that the ALJ seek the assistance of a vocational expert at step five.

At step five a vocational expert's testimony is required when a non-exertional limitation is " 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation." *Id.* The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five.

**[2]** The regulations guiding the step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability. *See Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). In contrast, the step-five determination is necessary to ascertain whether there is a sig-

nificant number of jobs in the national economy that the claimant can perform. The grids provide broad categories of exertional limitations (and to a certain extent non-exertional limitations) and the range of jobs in each category. Thus, built into the step-five determination and the grids is recognition that the claimant has met the threshold requirement for a severe disability at step two.

**[3]** However, a vocational expert is required only when there are significant and "sufficiently severe" non-exertional limitations not accounted for in the grid. Clearly, the severity of the limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two, otherwise the two steps would collapse and a vocational expert would be required in every case in which a step-two determination of severity is made. This would defeat the purpose of the grids because a claimant could not reach the step-five determination without making out a prima facie case of a severe disability at step two. *Heckler*, 461 U.S. at 461 (explaining that the reason for establishing the grids as a substitute for vocational experts in most cases was to improve uniformity in the treatment of similarly situated claimants and increase efficiency in the disposition of cases). Therefore, we hold that satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert. Instead, an ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case.

In this case we affirm the ALJ and hold that Hoopai's depression was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert. Substantial evidence in the form of psychological evaluations by

Dr. Kathleen Brown and Dr. Robert Lambe and a review of the record by Dr. Harvey Bilik supports the ALJ's conclusion Hoopai's depression was not sufficiently severe such that it significantly affects his ability to work beyond the exertional limitations.

Dr. Brown and Dr. Lambe diagnosed Hoopai with moderately significant forms of depression and only prescribed limited treatment. Although Dr. Lambe concluded that it was unlikely that Hoopai would be able to function in a normal work environment, Dr. Brown determined that Hoopai had exaggerated his symptoms.

**[4]** Dr. Bilik reviewed the record and performed a mental residual functional capacity assessment of Hoopai. He concluded that Hoopai was not significantly limited in seventeen of the twenty categories of possible impairments in understanding and memory. Dr. Bilik determined that Hoopai was moderately limited in: his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Bilik did determine that Hoopai had symptoms of depression, however, the functional limitations of the claimant's depression on his activities of daily living and maintaining social functioning were mild, and the limitations were moderate on his ability to maintain concentration, persistence and pace.

**[5]** We have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation. As a result, we hold that in this case, substantial evidence supports the ALJ's conclusion that the depression was not a sufficiently severe non-exertional limita-

tion that prohibited the ALJ's reliance on the grids without the assistance of a vocational expert.

## B.   Opportunity to Cross-Examine Vocational Expert or Question the ALJ

Hoopai contends that he was improperly denied the opportunity to cross-examine a vocational expert or question the ALJ as to alternative jobs available in the economy. Hoopai relies on *Burkhart* to support this contention. In *Burkhart*, the ALJ speculated, without reference to any source, that the claimant "could do 'yard and lawn maintenance' or be a 'watchman or security monitor.' " *Burkhart*, 856 F.2d at 1341. He added that even taking into account the claimant's non-exertional limitations, "there are hundreds of jobs left which Mr. Burkhart can do." *Id.* We determined that these speculations were based on information outside of the record and that therefore Burkhart was effectively deprived "of an opportunity to cross-examine a witness or rebut testimony." *Id.*

**[6]** *Burkhart* is distinguishable from the present case. In this case, the ALJ relied on the grids and determined that jobs exist in significant numbers in the national economy that accommodate the claimant's residual functional capacity. Since the claimant's non-exertional limitations did not significantly erode the occupational base of jobs that Hoopai could perform, he concluded that there was a significant number of jobs available. The ALJ did identify three specific jobs that were available, relying on the Dictionary of Occupational Titles. However, this source, which is a part of the grids, was part of the record. 20 C.F.R. § 404.1569. Therefore, the claimant was not entitled to question the ALJ on the alternative jobs available.

## C.   Specific Findings on Functional Limitations

**[7]** Finally, Hoopai contends that the ALJ failed to comply with 20 C.F.R. § 404.1520a(c)(3) by not issuing a specific

finding in each of the functional areas based on all of the enumerated functional limitations of his mental impairment. This argument lacks merit. According to § 404.1520a(c)(3), the ALJ is required to rate the degree of functional limitations in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The ALJ clearly met this requirement by rating and assessing Hoopai's limitations in each of these four functional areas. The ALJ was not required to make any more specific findings of the claimant's functional limitations.

## IV.   CONCLUSION

We affirm the district court's conclusion that there was substantial evidence that Hoopai did not suffer from a sufficiently severe non-exertional limitation that would require the assistance of a vocational expert in the ALJ's step-five determination. We also hold that Hoopai was not entitled to question the ALJ on the alternative jobs available. Finally, we hold that the ALJ made specific findings of functional limitations as required by the social security regulations.

**AFFIRMED.**