**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 04 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



RHONDA L. O'NEAL,

      Plaintiff - Appellant,

  v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

      Defendant - Appellee.

No. 09-35989

D.C. No. 2:08-cv-01696-JLR

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted July 15, 2010
Seattle, Washington

Before: REINHARDT, GRABER and PAEZ, Circuit Judges.


    Rhonda O'Neal appeals the district court's decision affirming the Social

Security Commissioner's denial of social security benefits. We reverse and

remand.

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

O'Neal raises four challenges to the ALJ's decision. First, she contends that the ALJ erred by disregarding the opinions of four treating physicians regarding her exertional limitations, and crediting instead the opinions of a reviewing physician and a medical expert. Second, she contends that the ALJ erred by disregarding her daughter's testimony, which corroborated the opinions of her treating physicians as to her exertional limitations. Third, she argues that the ALJ improperly evaluated the listings. Finally, she argues that the ALJ erred by failing to call a vocational expert.

We agree with O'Neal as to issues one, two, and four. Our decision with respect to the first two issues dictates the conclusion that O'Neal's exertional limitations rendered her disabled as of her 50th birthday. We thus hold that she is entitled to benefits as of that date. Our decision on the fourth issue requires a remand to determine whether the combination of O'Neal's exertional and nonexertional limitations rendered her disabled and entitled her to benefits at any point prior to her 50th birthday.[1] In making that determination, the ALJ will first be required to reevaluate the listings in light of our holdings and determine whether, prior to her 50th birthday, O'Neal's impairments met or equaled a listing.

_____

[1]The date at which O'Neal's disability began may determine not only what period her benefits will cover, but also what type of benefits she will receive. She applied for both disability insurance benefits and supplemental security income.

Accordingly we do not reach the third issue regarding whether he erred in evaluating the listings previously. Should the ALJ again determine that O'Neal did not meet or equal a listing, he will then be required to call a vocational expert to determine whether, in light of the combination of O'Neal's exertional and non-exertional limitations as well as her age, education, and past work experience, there existed significant jobs in the national economy that she could perform at any point between the alleged onset of her disability and her 50th birthday.

## I. Exertional limitations

### A. Treating physician opinions

Four treating physicians (Drs. Rashid, Smith, Powell, and Murray) classified O'Neal's work level as "sedentary" or "severely limited," meaning that she is unable to walk for more than brief periods, if at all, and can carry no more than ten pounds. The ALJ nonetheless concluded that she is capable of walking or sitting for six hours a day and lifting twenty pounds occasionally. A treating physician's opinion is generally due "controlling weight," 20 C.F.R. § 404.1527(d)(2), and where, as here, it is contradicted by another doctor, it can be rejected only if the ALJ provides "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). We conclude that

none of the ALJ's reasons for rejecting the treating physicians' assessment of O'Neal's ability meet that standard.

The ALJ's primary reason for rejecting the treating physicians' opinions in favor of the reviewing physicians' was that O'Neal's failure to take her medications as prescribed and her "addictive behavior," as evidenced by her repeated trips to the emergency room to obtain pain medication for headaches, undermined her credibility. Where medical reports are based solely on a claimant's self-reporting, it may be reasonable for an ALJ who finds the claimant not credible to also question the reliability of the medical reports. *See Brawner v. Sec. of Health & Human Serv's*, 839 F.2d 432, 434 (9th Cir. 1988). There is no indication in this record, however, that the treating physicians' diagnoses of hypertension and renal insufficiency were based solely, if at all, on O'Neal's own reports. Rather, the diagnoses were based on objective medical tests. Nor is there evidence that the treating physicians' assessments of the impact O'Neal's hypertension and renal insufficiency would have on her ability to exert herself were based solely on O'Neal's own reports. Rather they were based, at least in substantial part, on the same objective evidence that supported the diagnoses. The ALJ's finding that O'Neal lacked credibility thus provided no reason to question the reliability of her physicians' assessments.

Moreover, the ALJ's reasons for doubting O'Neal's credibility are not "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. The record does not indicate that O'Neal received pain medication by complaining of hypertension and renal insufficiency; rather, the pain medication was prescribed in response to her complaints of persistent headaches.[2] Thus, an addiction to pain medication would not have provided her with an incentive to exaggerate her symptoms of hypertension and renal insufficiency, even were such exaggeration possible. And the record reveals two reasons for O'Neal's failure to comply with her physicians' treatment regimen that have nothing to do with her credibility. First, as found by Dr. Ankuta, an examining psychologist whose opinion the ALJ credited, O'Neal has "difficulty recalling even simple instructions." Her treatment regimen, which includes up to 16 different medications, is fairly described as complex, and thus is likely beyond her capacity to manage. Second, O'Neal testified that she sometimes goes without her medications because she cannot pay for them. Under these circumstances, O'Neal's failure to comply with prescribed treatment does not provide substantial evidence for questioning the credibility of her accounts of her symptoms. *See*

_____

[2]The ALJ found that O'Neal's headaches were not a "severe impairment," and she does not challenge that finding.

*Regennitter v. Soc. Sec. Comm'r*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("[W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it.").

The ALJ's other reason for rejecting the treating physicians' opinions was that he found them to be inconsistent with O'Neal's "wide range of activities."[3] Those activities were: "spen[ding] an hour getting her hair and nails done," going on a week-long beach vacation with her sisters, and caring for her daughter's children. The only one of these activities that might possibly require any physical exertion beyond sitting, walking, or standing for "brief periods" and lifting 10 pounds maximum is caring for children. It is clear from the record, however, that O'Neal assumed care of her grandchildren for a brief period due to exigent circumstances, and there is no evidence regarding the level of care that O'Neal provided. That a grandmother attempts to care for her grandchildren when necessity demands is not substantial evidence supporting a finding that, contrary to the opinion of her treating physicians, she is able to stand, walk or sit for six hours a day and lift twenty pounds occasionally. *Cf. Vertigan v. Halter*, 260 F.3d 1044,

---

[3]The ALJ also stated that the treating physicians' opinions were inconsistent with objective medical evidence. AR 26. The ALJ did not identify the particular "objective medical evidence" to which he was referring, however. "[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion." *Regennitter*, 166 F.3d at 1299.

1050 (9th Cir. 2001) ("A patient may do [physical] activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.").

Because the ALJ's reasons for rejecting the opinions of O'Neal's treating physicians were not specific, legitimate, and supported by substantial evidence, the treating physicians' opinions must be credited as a matter of law, *Lester*, 81 F.3d at 834, and are due controlling weight. 20 C.F.R. § 404.1527(d)(2). We thus conclude that O'Neal is limited to a sedentary or lower level of work.

### B.  Lay testimony

The ALJ also rejected a function report prepared by O'Neal's daughter on the ground that it was "inconsistent with [O'Neal's] wide-range of activities."  For the reasons discussed above, the "wide-range of activities" referred to by the ALJ is not relevant to an assessment of O'Neal's capacity for more than minimal physical and mental exertion.  Because the ALJ failed to provide "germane" reasons for rejecting O'Neal's daughter's report, we credit that report as true. *See Lewis v. Apfel*, 236 F.3d 503, 510-12 (9th Cir. 2001).  The report provides further evidence that O'Neal is limited to a sedentary or lower level of work.

### C. Because she is limited to sedentary work, it is clear that O'Neal was disabled as of her 50th birthday

The conclusion that O'Neal is limited to sedentary work mandates a determination that she was disabled as of her 50th birthday on January 8, 2008. That is because the Medical-Vocational Guidelines provide that a 50-54 year old individual with a high school education, past unskilled work or no transferable skills, who is limited to sedentary work is disabled. 20 C.F.R. pt. 404, subpt. P, Rule 201.12 & 201.14. This describes O'Neal as of her 50th birthday. Accordingly, she is entitled to benefits as of that date. On remand, the ALJ shall award those benefits.

Our conclusion that O'Neal is limited to sedentary work does not resolve the question whether she was disabled prior to her 50th birthday, and was thus entitled to benefits prior to that date. Under the Guidelines, a woman with O'Neal's exertional limits, education, and work experience who is younger than 50 is not disabled. *See* 20 C.F.R. pt. 404, subpt. P, Rule 201.27. The Guidelines do not, however, take into account O'Neal's non-exertional limitations. Whether the combination of O'Neal's exertional and non-exertional limitations rendered her disabled prior to her 50th birthday is a question the ALJ will be required to answer on remand.

## III.  Listings

If O'Neal's impairments meet or equal one of the listed impairments, she is considered disabled without consideration of her age, education, or work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  She would accordingly be entitled to benefits as of the date her impairments began.  In this case, it is not clear whether the ALJ would have come to the same conclusion regarding whether O'Neal met or equaled the listings had he properly credited the opinions of her treating physicians and her daughter.  On remand, the ALJ should reevaluate the listings in light of our decision.

## IV.  Vocational Expert

Should the ALJ again conclude that O'Neal's impairments neither meet nor equal the listings, he must then consider in light of her residual functional capacity, age, education, and past work experience whether, prior to her 50th birthday, there were a significant number of jobs in the national economy that she could perform.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Where a claimant's non-exertional limitations are "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations," an ALJ may not rely on the Medical-Vocational Guidelines alone to determine whether there are a significant

number of jobs in the national economy that the claimant can perform, but rather must call a vocational expert. *See Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)).

Here, the ALJ credited the opinion of Dr. Ankuta that O'Neal "would have difficulty recalling even simple instructions at work." According to the ALJ's own decision, the ability to recall simple instructions is one of the "basic mental demands of . . . unskilled work." It is apparent, then, that O'Neal's mental limitations do "significantly limit the range of work permitted by [her] exertional limitations." *Hoopai*, 499 F.3d at 1075 (internal quotation marks omitted). Accordingly, the ALJ erred by failing to call a vocational expert.

## V. Conclusion

We hold that the treating physicians' assessments of O'Neal's physical limitations must be credited as a matter of law. In light of those assessments, O'Neal was disabled as of her 50th birthday, and is entitled to benefits as of that date. On remand, the ALJ shall award those benefits. He must also reconsider whether O'Neal was disabled prior to her 50th birthday, and is thus entitled to benefits prior to that date. In so reconsidering, the ALJ shall credit the treating physicians' assessments of her exertional limitations. In light of those

assessments, he shall reconsider whether O'Neal met or equaled a listing. Should

he determine that she did not, he shall then call a vocational expert to testify

regarding the existence of jobs in the national economy that O'Neal could perform

prior to her 50th birthday.

REVERSED and REMANDED for further proceedings consistent with this decision.

Plaintiff to recover costs on appeal.

O'Neal v. Astrue, No. 09-35989

GRABER, Circuit Judge, dissenting:

I respectfully dissent because, in my view, the Commissioner's decision employs the correct legal standard and is supported by substantial evidence. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (describing our standard of review).

The administrative law judge ("ALJ") permissibly rejected the most restrictive of the "check-box" assessments of Claimant's limitations by her treating physicians. There were five treating physicians whose conclusions ranged from functional limitations "not applicable," to capable of sedentary work, to severe limitations. In that circumstance, the ALJ had to examine the underlying medical records, and he appropriately relied heavily on (but did not agree entirely with) the views of a medical expert. The ALJ considered all the evidence and permissibly weighed it. For the same reason, the ALJ properly evaluated Claimant's residual functional capacity.

The ALJ specifically found that Claimant's impairments neither meet nor equal a listed impairment. The ALJ's opinion gives sufficient reasons for review, and those reasons find support in the record.

The ALJ permissibly rejected lay testimony provided by Claimant's daughter. The ALJ gave a germane reason, namely, that the daughter's opinion as

to the level of her mother's disability was inconsistent with Claimant's range of activities.

The ALJ permissibly discounted Claimant's reporting of the extent of her limitations, relying on its inconsistency with other evidence and Claimant's repeated failure to follow recommended medical treatments. The ALJ also noted Claimant's range of activities, including driving a car, performing some household chores, vacationing in the Bahamas, and caring for grandchildren.