**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAMELA KEYSER,
                    *Plaintiff-Appellant,*

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,
                    *Defendant-Appellee.*

No. 10-35371

D.C. No.
1:08-cv-01268-CL

OPINION

Appeal from the United States District Court
for the District of Oregon
Mark D. Clarke, Magistrate Judge, Presiding

Submitted March 9, 2011*
Portland, Oregon

Filed June 1, 2011

Before: Dorothy W. Nelson, Sidney R. Thomas, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Thomas;
Dissent by Judge Graber

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Tim Wilborn, Wilborn Law Office, P.C., Oregon City, Oregon, for the appellant.

Dwight C. Holton, United States Attorney, Adrian L. Brown, Assistant United States Attorney; David Morado, Regional Chief Counsel; Benjamin J. Groebner, Assistant Regional Counsel, Seattle, Washington, for the appellee.

**OPINION**

THOMAS, Circuit Judge:

Pamela Keyser appeals the district court's decision affirming the Commissioner of Social Security's denial of her applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand for further proceedings.

I

Pamela Keyser applied for disability benefits based on combined impairments including bullous emphysema, depression, anxiety, and bipolar disorder. Keyser alleges that her disability began when her right lung collapsed. Her lung was surgically repaired and she was discharged eight days later. Keyser was advised that the chance of either her right lung collapsing again, or her left lung collapsing for the first time, was as high as thirty percent. Two of Keyser's treating physicians, Dr. Marc Jacobs and Dr. Stephen Knapp, reported that Keyser was unable to work because of her severe emphysema and potential for another collapsed lung. In addition to these physical ailments, Drs. Jacobs and Knapp reported that Keyser suffered from severe depression and generalized anxiety disorder, which also impacted her ability to work. Dr. Knapp referred Keyser to a psychiatrist, Dr. Monteverdi, who diagnosed Keyser with bipolar disorder, and paranoid and schizotypal personality traits. Dr. Monteverdi assessed Keyser's Global Assessment of Functioning[1] at 55 to 65 and

---

[1]"A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need

completed a medical source statement indicating that Keyser had moderate limitations in a variety of areas.

A year after the onset of the disability, Dr. Lahman conducted an agency review of Keyser's psychiatric condition and reported his findings on a Psychiatric Review Technique Form. He noted that Keyser had medically determinable impairments of depression and anxiety, but concluded that the degree of limitation in three functional areas (restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace) were mild. Dr. Lahman also reported that Keyser had no limitation in the fourth functional area (episodes of decompensation of extended duration).

During a hearing before an administrative law judge ("ALJ"), Keyser reported shortness of breath while working, which required her to sit or take breaks every half hour, and to nap two or three times daily for around one hour. She also testified that she has anxiety and paranoia, and a fear of collapsing another lung if she over-exerts herself. However, Keyser admitted that she sings in a rock-and-roll band approximately three times a week. Keyser's husband also testified at the hearing, confirming that her depression and bipolar disorder had worsened after her lung collapsed. He further testified that she needed to lie down ninety percent of the day because she was so easily fatigued.

The ALJ asked a vocational expert ("VE") who testified at Keyser's hearing to assume that a hypothetical worker could lift twenty-pound items occasionally and ten-pound items frequently, that she could stand or walk no more than six hours in an eight-hour workday, and that she needed to avoid exposure to fumes, odors, dusts, gases, and otherwise poor ventila-

---

for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

tion. Based on these limitations, the VE testified that this hypothetical worker could not maintain Keyser's prior work as a grocery store cashier, because that would require her to remain on her feet for the majority of the day, but that she could work as a different kind of cashier, classified as Cashier I or II. Although a Cashier I position is classified as a semi-skilled job, the VE explained that a Cashier II position involves only unskilled, simple, and routine work. The VE then noted that there were 1.2 million cashier jobs in the national economy, with 43,000 positions in the state of Oregon. The VE further limited the state-specific number to 12,696 positions to account for Keyser's need to be sitting.

The ALJ issued a written decision denying Keyser disability benefits. The ALJ determined that Keyser's emphysema was a severe impairment. However, the ALJ noted that "while the claimant's bipolar disorder is a medically determinable impairment, it is not severe. Such was the conclusion of the state agency medical consultant, Frank Lahman, PhD, . . . as found in the psychiatric review technique form." The ALJ then determined that Keyser did not meet or equal any of the listed respiratory impairments. Finally, the ALJ reviewed the record, including the opinions of Drs. Jacobs, Knapp, and Monteverdi, and the lay testimony of Keyser and Keyser's husband. The ALJ concluded that although Keyser could not perform any of her prior work, she could perform work as a Cashier II and that a significant number of Cashier II positions exist in the national economy.

The Appeals Council declined to review the ALJ's disability determination. Keyser appealed to the United States District Court for the District of Oregon, which affirmed the ALJ's denial of disability. Keyser now appeals.

II

**[1]** Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled

within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520. The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform? *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

In this case, the ALJ erred in steps two and three by failing to follow the procedures proscribed in 20 C.F.R. § 404.1520a for determining whether Keyser has a severe mental impairment and, if so, determining whether that impairment meets or equals any of the listed impairments.

**[2]** In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. In making this determination, an ALJ is bound by 20 C.F.R. § 404.1520a. That regulation requires those reviewing an application for disability to follow a special psychiatric review technique. 20 C.F.R. § 404.1520a. Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, *id.* § 404.1520a(b), rate the degree of functional limitation for four functional areas, *id.* § 404.1520a(c), determine the severity of the mental impairment (in part based on the degree of functional limitation), *id.* § 404.1520a(c)(1), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder, *id.* § 404.1520a(c)(2).

**[3]** At the first two levels of review, this technique is documented in a Psychiatric Review Technique Form ("PRTF"). *Id.* § 404.1520a(e). At hearings before an ALJ or the Appeals Council, however, the Commissioner must "document appli-

cation of the technique in the decision." *Id.* Specifically, "the written decision *must* incorporate the pertinent findings and conclusions based on the technique" and "*must* include a specific finding as to the degree of limitation in each of the functional areas." *Id.* § 404.1520a(e)(4) (emphasis added); *see also* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,757-58 (Aug. 21, 2000) (to be codified at 20 C.F.R. pt. 404 & 416) ("The primary purpose of the final rules is to describe the technique, as distinct from the [PRTF], and to require the use of the technique in all determinations and decisions at all levels of the administrative review process . . . ."). In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a "narrative rationale," instead of the "checklist of . . . conclusions" found in a PRTF. *See* 65 Fed. Reg. at 50,757-58.

**[4]** The question, then, is what consequences attach in failing to append the PRTF or incorporate its findings in the written ALJ decision. We previously analyzed this question under the predecessor regulation, and concluded it was reversible error. In *Gutierrez v. Apfel*, we held that the failure of the ALJ to complete and append the PRTF, as required at the time, required reversal of the district court's decision upholding the ALJ's denial of benefits. *Gutierrez*, 199 F.3d 1048, 1050 (9th Cir. 2000), *superseded by regulation as stated in Blackmon v. Astrue*, 719 F. Supp. 2d 80, 92 (D.D.C. 2010). When we decided *Gutierrez*, the ALJ was required to both make the specific findings, and attach the PRTF to the written decision. *See* 20 C.F.R. § 404.1520a(d)(2) (2000) ("For all cases involving mental disorders at the administrative law judge hearing or Appeals Council levels, the standard document will be appended to the decision."). When this rule was changed, the Commissioner explained that because the written decision must include "the pertinent findings and conclusions required in the application of the technique," requiring attachment "would only repeat information already required . . . and renders the PRTF redundant." Revised Medical Criteria for Eval-

uating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,757-58 (Aug. 21, 2000) (to be codified at 20 C.F.R. pt. 404 & 416). Although the regulation no longer requires attachment of the PRTF, the *Gutierrez* analysis remains unchanged: the Social Security Regulations require the ALJ to complete a PRTF and append it to the decision, or to incorporate its mode of analysis into the ALJ's findings and conclusions.

Our sister circuits agree. *See Stambaugh v. Sullivan*, 929 F.2d 292, 296 (7th Cir. 1991), *superseded by regulation as stated in Burke v. Astrue*, 306 Fed. Appx. 312 (7th Cir. 2009) (ALJ's failure to evaluate claimant's alleged mental disorder or to document the procedure on a PRTF required reversal); *Hill v. Sullivan*, 924 F.2d 972, 975 (10th Cir. 1991) (same); *Montgomery v. Shalala*, 30 F.3d 98, 99-100 (8th Cir. 1994) (reversing and remanding because ALJ purported to evaluate mental disorder, but failed to do so in accordance with psychiatric review technique). As the Eleventh Circuit summarized in *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005):

> We thus join our sister circuits in holding that where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand.

**[5]** In this case, the written decision did not document the ALJ's application of the technique and did not include a specific finding as to the degree of limitation in any of the four functional areas. The decision simply referenced and adopted the PRTF completed earlier by Dr. Lahman. Under *Guiterrez*, this is insufficient to meet the requirements of 20 C.F.R. § 404.1520a(e) and constitutes legal error.

*Hoopai v. Astrue*, 499 F.3d 1071, 1077-78 (9th Cir. 2007), is not to the contrary. In *Hoopai*, the ALJ did in fact make an

explicit finding as to each of the four functional areas as required under 20 C.F.R. § 404.1520a(e). *Hoopai*, 499 F.3d at 1078 ("The ALJ clearly met this requirement by rating and assessing Hoopai's limitations in each of these four functional areas."). Hoopai's argument was that the ALJ was further required to document the considerations underlying the findings for those four areas. We rejected such an extensive requirement, concluding that a specific finding as to the four functional limitations was sufficient even without a finding "based on all of the enumerated functional limitations." *Id.* at 1077. In Keyser's case, in contrast, the ALJ did not state his findings as to the four functional areas as required by the plain language of 20 C.F.R. § 404.1520a(e).

III

**[6]** An ALJ's failure to comply with 20 C.F.R. § 404.1520a is not harmless if the claimant has a "colorable claim of mental impairment." *Gutierrez,* 199 F.3d at 1051. The record demonstrates that Keyser has made such a claim. Keyser's treating doctors diagnosed her with bipolar disorder, and paranoid and schizotypal personality traits. Dr. Monteverdi completed a medical source statement indicating that she had moderate limitations in several areas including the ability to understand and remember detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public or customers, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to maintain socially acceptable behavior, and the ability to respond to unexpected changes in the work place. She also received a Global Assessment of Functioning of 55 to 65, which indicates mild to moderate symptoms. Furthermore, Keyser's husband submitted a written statement and testified as to his wife's mental impairments and their impact on her ability to maintain employment. Thus, the ALJ's failure to follow 20 C.F.R. § 404.1520a(e) was not harmless because

Keyser has demonstrated a colorable claim of mental impairment.

The ALJ also erred at step three because he failed to consider whether Keyser's mental impairment met or equaled a listed impairment. *See* 20 C.F.R. § 404.1520a(d)(2) ("If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder."). This failure was understandable given the ALJ's adoption of Dr. Lahman's conclusion that the mental impairment was not severe. However, because we hold that the ALJ erred in his determination of the severity of Keyser's impairment at step two, we cannot determine whether the impairment was in fact severe, thereby triggering the meets or equals analysis under step three.

IV

**[7]** In summary, we hold that the ALJ erred by failing to follow the requirements of 20 C.F.R. § 404.1520a in determining whether Keyser's mental impairments were severe and, if severe, whether they met or equaled a listed impairment. We reverse the judgment of the district court with instructions to remand to the ALJ to conduct a proper review of Keyser's mental impairments. We need not, and do not, reach any other issue urged by the parties.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

GRABER, Circuit Judge, dissenting:

I respectfully dissent because I find no error in the ALJ's decision. And, even assuming that the ALJ erred when he did not explicitly state his findings in each of the four functional

areas prescribed by 20 C.F.R. § 404.1520a, that error is harmless. I therefore would affirm the denial of benefits.

The ALJ considered Keyser's mental problems and concluded that they did not add up to a severe impairment. "Such was the conclusion of the state agency medical consultant," the ALJ explained, "as found in the psychiatric review technique form" ("PRTF"). Although Keyser sought the help of Dr. Monteverdi only after the medical consultant's review, nothing in Dr. Monteverdi's reports caused the ALJ to question the earlier determination made by the consultant. To the contrary, the ALJ observed, "Dr. Monteverdi reported that, during the few times he treated [Keyser], she had responded well to medication." The ALJ also observed that Keyser had worked successfully for years under the primary diagnosis that Monteverdi gave her. For those reasons, all of which the record supports,[1] the ALJ determined that Keyser had no severe mental impairment.

Despite the substantial evidence underlying the ALJ's determination, the majority faults him for failing "to complete a PRTF and append it to [his] decision, or to incorporate its mode of analysis into [his] findings and conclusions." Maj. op. at 7239. In my view, the ALJ did incorporate the PRTF's mode of analysis into his findings and conclusions. He explicitly referenced the PRTF completed by the agency consultant and explained cogently why the consultant's analysis persuaded him even in light of Dr. Monteverdi's more recent assessments and treatment. The relevant regulation requires nothing more.[2]

---

[1]Indeed, consistent with Dr. Monteverdi's reports, Keyser admitted at her hearing that her mental troubles improved after she began to take the medication that Dr. Monteverdi had prescribed.

[2]That regulation, 20 C.F.R. § 404.1520a(e), places the "overall responsibility for assessing medical severity and for completing and signing the [PRTF]" on the agency consultant. At the hearing stage, § 404.1520(e)(4) requires the ALJ merely to "document application of the technique."

In reaching the opposite conclusion, the majority relies too much on *Gutierrez v. Apfel*, 199 F.3d 1048 (9th Cir. 2000), and similar cases. As the majority acknowledges, the rules have changed since *Gutierrez*. Maj. op. at 7238. The agency amended § 404.1520a in September 2000 to excuse ALJs from the redundant process of having to document their application of the technique in written decisions and also having to complete the "checklist of . . . conclusions" in the PRTF. 65 Fed. Reg. 50,746-01, 50,757 (2000). "The PRTF (i.e., the form itself) should not be confused with application of the technique," the agency warned. *Id.* Unlike the PRTF, a decision documenting application of the technique will "include a more detailed explanation of the findings and conclusions reached, supported by a narrative rationale." *Id.* It is the amended rule, not the old one, that applies here.[3]

The ALJ followed the amended rule. His written decision provided precisely what the agency had in mind. He explained his conclusion with respect to the severity of Keyser's mental impairment and he supported that conclusion with a narrative rationale. Requiring the ALJ to go back and include the PRTF's checklist of conclusions, either by amending his written decision or by attaching a newly completed PRTF, restores the redundancy that the agency sought to eliminate. The majority nevertheless remands this nearly six-year-old case for just that empty exercise.

Even if it were error not to give more attention to the findings in the PRTF in the written decision, that error is harmless

---

Although § 404.1520(e)(4) states that the ALJ "must include a specific finding as to the degree of limitation in each of the functional areas," we have declined to read that provision stingily. *Hoopai v. Astrue*, 499 F.3d 1071, 1077-78 (9th Cir. 2007). And, in any case, the ALJ included such findings by *expressly incorporating* the agency consultant's conclusions "as found in the psychiatric review technique form."

[3]Keyser's hearing took place on October 30, 2007, and the ALJ issued his written decision on November 30, 2007.

here. We have recognized that an error "inconsequential to the ultimate nondisability determination" is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (refusing to disturb an ALJ's decision, regardless of error, "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions' . . . and the error 'does not negate the validity of the ALJ's ultimate . . . conclusion' " *(quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004))). Applying the harmlessness analysis here, it is clear to me that the ALJ's failure to fill out the PRTF was inconsequential. There remains substantial evidence to support the ALJ's conclusion that Keyser had no severe mental impairment. The absence of a PRTF, which undoubtedly would repeat the same findings made by the agency's consultant, does not negate the validity of the ALJ's decision.

That analysis reveals yet another way in which *Gutierrez* differs from this case. In *Gutierrez*, 199 F.3d at 1051, the claimed mental impairment formed the "central" basis of the disability claim and the facts were far more suggestive of a severe mental impairment. Indeed, the ALJ agreed with the claimant that she suffered from "a serious mental impairment," but simply disagreed as to how long it would take for her to recover. *Id.* at 1050. In those circumstances, we could not say that the ALJ's failure to complete and attach a PRTF was inconsequential, so we sent the case back to the agency for reconsideration. *Id.* at 1051.

Here, by contrast, Keyser's *lung condition* formed the central basis for her claim. Only after her lung collapsed could she no longer work. As mentioned earlier, Keyser worked for years with bipolar disorder and, although she developed anxiety and depression after her lung collapsed, those problems *consistently improved* after Dr. Monteverdi gave her a new medication. The record firmly supports the ALJ's determina-

tion that Keyser had no severe mental impairment. Any procedural error in making that determination was harmless.