**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DIANA WOODMASS,

Plaintiff-Appellant,

v.

NANCY A. BERRYHILL, Acting
Commissioner Social Security,

Defendant-Appellee.

No.    15-16890

D.C. No. 2:14-cv-00895-ESW

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Eileen S. Willett, Magistrate Judge, Presiding

Argued and Submitted July 11, 2017
San Francisco, California

Before: BEA and N.R. SMITH, Circuit Judges, and LYNN,[**] Chief District Judge.

Diana Woodmass appeals the denial of her application for disability

insurance benefits and supplemental security income, which we have jurisdiction

to review. 28 U.S.C. § 1291. We vacate and remand for further proceedings.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Barbara M. G. Lynn, Chief United States District Judge for the Northern District of Texas, sitting by designation.

**1.** The administrative law judge (ALJ) erred by ignoring the opinions of Drs. Ting, Chaffee, and Van Eerd. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In light of the ALJ's finding that the decline in Woodmass's condition amounted to changed circumstances, res judicata and the presumption of continued non-disability do not apply. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996). Because the ALJ in this case was considering a new period of alleged disability, with no presumption against Woodmass, the ALJ was required to comply with his duty to "*always* consider the medical opinions in [the] case record" and to "evaluate *every* medical opinion [he] receive[s]" when determining Woodmass's residual functioning capacity (RFC) and ultimate disability. 20 C.F.R. § 416.927(b)–(c) (emphasis added).

Just because medical opinions were submitted in support of a prior application does not negate the relevance of the opinions or the ALJ's duty to consider them in the present adjudication. *See Hammock v. Bowen*, 879 F.2d 498, 501–02 (9th Cir. 1989) (holding the ALJ did not provide sufficient reasons for discounting a treating physician's opinion, reasoning (in part) that "all of the *prior* medical evidence in the record, *obtained from other SSI benefits applications*, supports the treating physician's findings of impairment" in the present claim (emphasis added)).

We cannot say that ignoring the opinions of Drs. Ting, Chaffee, and Van Eerd was "inconsequential to the ultimate nondisability determination," nor can we "confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015).

For example, the ALJ previously assigned Dr. Ting's opinions "little weight," reasoning (in part) that Woodmass's kidney condition quickly improved. But, in light of the subsequent finding in this case that Woodmass has a definitive diagnosis of chronic kidney disease contributing to a severe impairment, this reasoning for discounting Dr. Ting's opinions seems not to apply. The ALJ failed entirely to consider the records or opinions of Dr. Ting—the kidney specialist who made the diagnosis and treated Woodmass's kidney condition for one and a half years. Instead, the only medical evidence the ALJ cited concerning the state of Woodmass's kidney condition was a single treatment note from Dr. DeCastro, stating that the condition was "stable." However, what the ALJ failed to mention was that Dr. DeCastro's same treatment note expressly deferred evaluation and management of the kidney condition to Dr. Ting. Further, Woodmass's kidney condition appears to have been anything but stable. The initial diagnosis by Woodmass's kidney specialist was stage III chronic kidney disease with acute

3

renal failure. The condition subsequently improved to stage II and later declined again to stage III. And while Woodmass's most recent medical records contained in the administrative record indicate that she returned to stage II, she remained very near the border of declining again to stage III.[1]

Dr. Chaffee opined that Woodmass could never reach, handle, finger, or feel, due to a suspected peripheral neuropathy. In both adjudications, the ALJ failed to address directly this opinion. The ALJ ultimately concluded that Woodmass could perform her past relevant work as a receptionist. Yet the vocational expert specifically testified in this case that a person with these limitations could not work as a receptionist.

Dr. Van Eerd opined that Woodmass's understanding and memory were limited to "simple work-like instructions such as directions, locations and

---

[1] According to the National Kidney Foundation, the "glomerular filtration rate [(GFR)] is the best test to measure [the] level of kidney function and determine [the] stage of kidney disease. National Kidney Foundation, *Glomerular Filtration Rate (GFR)*, https://www.kidney.org/atoz/content/gfr (last visited Aug. 14, 2017). "If [the] GFR number is low, [the] kidneys are not working as well as they should." *Id.* An average GFR for someone Woodmass's age is 93. *Id.* A person with kidney disease and a GFR from 89 to 60 is at stage II. *Id.* A GFR from 59 to 44 indicates stage IIIa, and a GFR from 44 to 30 is stage IIIb. *Id.* Woodmass's GFR was 53 when Dr. Ting made the initial diagnosis in May 2009. The GFR increased to the mid-60s for several months but dropped to 54 in November 2010. Woodmass's final GFR reflected in the record was 63 (in March 2012), only four points above stage III. Additionally, Drs. Ting and Chaffee both indicated that Woodmass had a diabetic nephropathy, a kidney-related complication of diabetes.

procedures"; and her sustained concentration was limited to "carry[ing] out short simple instructions." Had the ALJ properly considered Dr. Van Eerd's opinions along with those of Dr. D'Ambrosio and the other physicians, the ALJ could have determined that Woodmass was limited to unskilled work. Such a finding, in combination with Woodmass's physical limitations, could result in a finding of disability.

In sum, Woodmass has many maladies combining to form a severe impairment, and her conditions appear to all be fairly interrelated. This case also involves many different physicians opining as to various factors that could contribute to a finding of disability. In light of the acknowledged decline in Woodmass's condition, it is certainly possible that the opinions of Drs. Ting, Chaffee, and Van Eerd from the prior adjudication could have changed the ALJ's view of the medical evidence he considered in the present adjudication. These opinions could also have added credibility to the opinions of Drs. Kline and/or DeCastro; they could, likewise, have decreased the credibility of the agency physicians on whom the ALJ relied.[2]

---

[2] The Commissioner's harmless-error argument (that evidence on which the ALJ relied was more persuasive than prior medical evidence, as it was produced after July 8, 2010) is unpersuasive, and she cites no supporting authority. Further, she largely fails to respond to Woodmass's arguments that the error was harmful.

**2.** The ALJ provided specific and legitimate reasons supported by substantial evidence for the weight he assigned to the opinions of Drs. Kline, DeCastro, and D'Ambrosio. The positive statements about Woodmass's condition (reflected in Dr. Kline's treatment notes) were inconsistent with Dr. Kline's assessment that Woodmass was essentially incapable of sustaining work. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And, although treating Woodmass every six months may suggest familiarity with her condition, this relatively infrequent treatment also contradicted the seriousness of Woodmass's symptoms. *See* 20 C.F.R. § 404.1527(c)(2)(i) (examination frequency is relevant factor). Dr. DeCastro's opinions were similarly inconsistent with his treatment notes, *see Bayliss*, 427 F.3d at 1216, and he essentially acknowledged relying, in large part, on Woodmass's subjective reports, *see Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (holding that ALJ could discount opinions "premised to a large extent" on claimant's subjective reports (citation omitted)). Although Dr. D'Ambrosio opined that Woodmass may have mild to moderate "difficulties" with memory, understanding, interacting, and adapting, she did not opine that these difficulties would prevent Woodmass from working. In fact, "[w]e have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's

ability to do work . . . ." *See also Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007). Thus, the ALJ could reasonably make that determination himself.

While the reasons for the weight the ALJ assigned these doctors' opinions would otherwise have been sufficient, the ALJ will need to revisit these opinions alongside those that he erroneously ignored, in order to get a complete picture of the medical evidence.

3.      The ALJ did not err in assessing Woodmass's credibility, because he referred to her specific testimony, explained his reasons for discounting that testimony, and cited specific record evidence to support his decision. For example, the ALJ reasonably found that Woodmass's ability to perform household chores, interact with others, pick up her son from school, and care for her personal hygiene were inconsistent with her claim of disabling impairments. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ further supported his conclusion about Woodmass's credibility by finding that her claims were inconsistent with (1) the treatment records and objective medical evidence, *see id.* at 604, (2) her own testimony about some of her conditions, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), and (3) her failure to comply with recommended and prescribed treatment, *see Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

4.      Though the ALJ did not provide germane reasons for discounting the

statements of Woodmass's sister, this error was harmless. The ALJ assigned the sister's statements "little weight . . . because of their high degree of subjectivity, and their lack of medically acceptable standards." Neither of these reasons is valid. Lay witness evidence, based on the personal knowledge and observations of friends and family members, regarding a claimant's symptoms, activities, and limitations, is inherently subjective. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). Additionally, the failure to meet medically acceptable standards is an invalid reason, because the ALJ is required to consider "observations by *nonmedical* sources about how impairments affect a claimant's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (emphasis added). Nevertheless, the ALJ's error on this issue was harmless, because the sister's statements provided essentially the same information as Woodmass's statements, which the ALJ permissibly discounted. *Molina*, 674 F.3d at 1122.

5.      Remand for an award of benefits is not the appropriate remedy here, because further determinations are necessary to decide whether Woodmass is disabled. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). On remand, the ALJ must consider the medical opinion evidence he ignored and determine how his weighing of those opinions affects the RFC assessment and Woodmass's ability to work.

**VACATED** and **REMANDED** for further proceedings. Each party shall bear its own costs on appeal.