**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2487**

CONSTANCE L. PATTERSON,

        Plaintiff – Appellant,

    v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

        Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Bruce H. Hendricks, District Judge. (2:14-cv-00763-BHH)

Argued: December 7, 2016        Decided: January 19, 2017

Before KING, DUNCAN, and KEENAN, Circuit Judges.

Reversed and remanded with instructions by published opinion. Judge Duncan wrote the opinion, in which Judge King and Judge Keenan joined.

**ARGUED:** William Daniel Mayes, SMITH, MASSEY, BRODIE, GUYNN & MAYES, P.A., Aiken, South Carolina, for Appellant. Evelyn Rose Marie Protano, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Nora Koch, Acting Regional Chief Counsel, Charles J. Kawas, Acting Supervisory Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania; William N. Nettles, United States Attorney, Marshall Prince, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

DUNCAN, Circuit Judge:

Plaintiff-Appellant Constance L. Patterson ("Patterson") appeals from a district-court order affirming the Social Security Administration's ("SSA") decision to deny her application for disability benefits. This case presents an issue of first impression in our circuit: whether an Administrative Law Judge's ("ALJ") failure to follow the special technique required by 20 C.F.R. § 404.1520a when evaluating a claimant's mental impairment requires remand or may constitute harmless error. We hold that such an error does not automatically require remand, but that the error was not harmless on these facts. For the reasons that follow, we reverse the district court's order with instructions to remand to the ALJ for appropriate review of Patterson's mental impairment.

I.

Patterson filed an application for disability insurance benefits on July 21, 2010. The SSA denied Patterson's application initially and on reconsideration. Patterson then filed a timely request for a hearing on May 12, 2011.

After a hearing, an ALJ also denied her application, finding that Patterson was not disabled during the period for which she sought benefits. In so ruling, the ALJ claimed to

2

have reached his decision on the objective medical record, but he based his findings regarding Patterson's impairments primarily on the conclusions of one doctor, Dr. Horn. With regard to the ALJ's evaluation of Patterson's mental impairment specifically, the ALJ failed to (1) follow the procedures outlined in 20 C.F.R. § 404.1520a ("the special-technique regulation"), and (2) discuss other medical-record evidence that conflicted with Dr. Horn's opinion, such as contrary opinions of other physicians or contradictory portions of medical test results. Understanding where the ALJ went wrong in evaluating Patterson's disability requires background knowledge of the complex web of regulations governing the ALJ's review, which we discuss at great length infra Part II.A.1. For now it suffices to note that, on appeal, the SSA concedes error in the ALJ's failure to assess Patterson's mental impairment--and its effect on her working abilities--in the manner prescribed by the special-technique regulation.

Patterson sought review of the ALJ's decision, but the SSA's Appeals Council denied her request, rendering the ALJ's decision the final decision of the SSA Commissioner for purposes of judicial review. 42 U.S.C. § 405(g). Patterson timely filed suit in federal district court, claiming that the ALJ ignored regulatory requirements and reached a decision unsupported by substantial evidence. Before the magistrate judge, Patterson

3

requested a reversal of the SSA's determinations and a remand for (1) an award of benefits, or alternatively, (2) further administrative proceedings. The magistrate judge recommended affirming the SSA, on the grounds that (1) substantial evidence supported all of the ALJ's challenged findings, and (2) the ALJ's failure to articulate his findings in accordance with the special-technique regulation constituted harmless error. The district court adopted the magistrate's report and recommendation and affirmed the SSA's decision. Patterson timely appealed.

II.

On appeal, Patterson seeks a remand to the SSA for proceedings consistent with the special-technique regulation and other applicable regulations.[1] The SSA counters that any missteps by the ALJ constitute harmless error because this court can itself apply the special technique in determining whether substantial evidence supports the ALJ's denial of benefits.

---

[1] Patterson also argues that the ALJ erred by failing to (1) adequately consider all impairments listed in SSA regulations, (2) accord controlling weight to her treating physician's opinion, and (3) properly explain the sit/stand option in assessing her ability to work. As we explain, we cannot consider the merits of these claims, or reach an independent conclusion on whether Patterson is entitled to benefits because the ALJ failed to follow the special-technique regulation in documenting his conclusions.

4

We review an SSA decision only to determine if it is supported by substantial evidence and conforms to applicable and valid regulations. 42 U.S.C. § 405(g); Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, this court may not affirm for harmless error. See Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011); see also Shinseki v. Sanders, 556 U.S. 396, 407 (2009) (noting that "general case law governing application of the harmless-error standard" applies equally to administrative cases). Because the ALJ's failure to follow the special-technique regulation frustrates effective judicial review in this case, we reverse the district court's order with instructions to remand to the SSA for proceedings consistent with its own regulations.

Below, we first outline the statutory and regulatory framework governing the SSA's grant or denial of benefits, and how the ALJ applied that framework here. Next, we explain why we cannot accept the SSA's invitation to apply the special technique ourselves in the first instance. We do not decide whether failure to follow the special technique requires remand in every case, but we are satisfied that the error here requires remand.

5

A.

1.

The Social Security Act ("the Act") provides for benefits to claimants below retirement age who are "under a disability." 42 U.S.C. § 423(a)(1)(E). SSA regulations set out a step-by-step process for determining disability benefits. 20 C.F.R. § 404.1520(a)(1). Steps 1 through 3 ask: (1) whether the claimant is working; (2) if not, whether she has a "severe impairment"; and (3) if she does, whether the impairment "meets or equals a listed impairment." See id. § 404.1520. Satisfying step 3 warrants an automatic finding of disability, and relieves the decision maker from proceeding to steps 4 and 5. See id. § 404.1520(d); see also Sullivan v. Zebley, 493 U.S. 521, 532 (1990).

If the claimant satisfies steps 1 and 2, but not step 3, then the decision maker must determine the claimant's residual functional capacity, that is, an evaluation of her ability to perform work despite her limitations ("RFC assessment"). 20 C.F.R. § 404.1520(e). In determining the most a claimant can still perform, the decision maker must evaluate "all" relevant record evidence. Id. This RFC assessment is a holistic and fact-specific evaluation; the ALJ cannot conduct it properly without reaching detailed conclusions at step 2 concerning the type and severity of the claimant's impairments.

6

After conducting the RFC assessment, the ALJ proceeds to step 4. Id. §§ 404.1520(a)(4)(iv), 404.1520(f). At step 4, the decision maker determines whether the impairment prevents the claimant from performing "past relevant work." Id. § 404.1520(a)(4)(iv).[2]

The special-technique regulation affects how an ALJ evaluates and documents his process at steps 1 through 4 if the claimant alleges a mental impairment. Id. § 404.1520a. When evaluating and documenting the severity of a claimant's mental impairment at steps 2 and 3--and its concomitant impact on the RFC assessment relevant to step 4--the ALJ "must follow [the] special technique." Id. § 404.1520a(a) (emphasis added).

Under the special-technique regulation, if the ALJ determines that a mental impairment exists, he "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings." Id. § 404.1520a(b)(1). The ALJ must also document "a specific finding as to the degree of limitation in each of" the four areas of functional limitation listed in § 404.1520a(c)(3). Id. § 404.1520a(e)(4). In the first three areas of functional limitations--(a) activities of daily living, (b) social

---

[2] An alternative process governs where insufficient evidence supports a finding at the fourth step, 20 C.F.R. § 404.1520(h), but that exception does not apply here.

functioning, and (c) concentration, persistence, or pace--the ALJ must rate the degree of limitation using "the following five-point scale: None, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(4). The ALJ must rate the fourth functional area--(d) episodes of decompensation--using "the following four-point scale: None, one or two, three, four or more." Id. Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment. Id. § 404.1520a(d). If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities. See id. § 404.1520a(d)(3). The regulation specifically provides that the ALJ must document all of the special technique's steps. Id. § 404.1520a(e)(4).

The claimant carries the burden of proof at steps 1 through 4. See 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a). If a claimant carries her burden, the burden shifts to the SSA at step 5 to demonstrate that the impairment does not prevent the claimant from engaging in other substantial gainful employment. See 20 C.F.R. §§ 404.1520(g)(1), 404.1512(f). To do this, the SSA Commissioner must present "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her]

8

residual functional capacity and vocational factors." Id. § 404.1560(c)(2).[3]

2.

In the present case, at steps 1 and 2, the ALJ found that Patterson was not working, and had severe physical and mental impairments. At step 3, he determined these impairments did not meet or equal any listed impairment. In reaching these conclusions, the ALJ mentioned the findings of two doctors-- Dr. Horn and Dr. Ritterspach.[4] However, the ALJ did not evaluate the severity of Patterson's mental impairment in accordance with the special technique, nor did he document application of the special technique in his decision as required by the regulation. 20 C.F.R. § 404.1520a(e). In addition, the record contained evidence that conflicted with the findings of these doctors, and the ALJ did not address these conflicts.

---

[3] The Act defines "work which exists in the national economy" as work that "exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). This is often demonstrated by vocational-expert testimony on the matter. See Grant v. Schweiker, 699 F.2d 189, 191–92 (4th Cir. 1983).

[4] Dr. Ritterspach had completed a psychological evaluation of Patterson, and Dr. Horn had reviewed this evaluation to conclude that Patterson had the severe mental impairment of borderline intellectual functioning. The ALJ agreed with Dr. Horn "that the claimant's test results show that the claimant was functioning at the borderline intellectual level," A.R. 15, in making his mental-impairment findings and in conducting his RFC assessment.

9

In his RFC assessment, the ALJ explained that Patterson's impairments allowed her to perform "light work" with the requirement that employers give her discretion to switch from sitting to standing while performing work. At step 4, the ALJ found that this RFC assessment prevented Patterson from performing any "past relevant work." But at step 5, he concluded that Patterson did not qualify as disabled because vocational-expert testimony established that her RFC assessment matched available alternative work activity.

## B.

### 1.

The SSA concedes that the ALJ did not document application of the special technique in reaching these findings, or explicitly adopt physician findings that could possibly qualify alone as a surrogate for the special-technique assessment. Nevertheless, the SSA claims that we can examine the record evidence and apply the special technique ourselves. Noting that the question before us is an issue of first impression, the SSA argues that if we reach the ALJ's conclusion after our own application of the special technique, then we can affirm the ALJ's denial of benefits on harmless-error grounds. Our sister circuits that have considered this issue have split on whether

10

harmless-error review applies, both in analyzing the current special-technique regulation and its predecessor.[5]

Of the courts that have found harmless error, only the Sixth Circuit has analyzed the language of the special-technique regulation in so holding. See Rabbers v. Comm'r Soc. Sec. Admin., 582 F.3d 647, 656–57 (6th Cir. 2009). In Rabbers, the court reached its harmless-error conclusion after noting that the opening provision of 20 C.F.R. § 404.1520a states "[u]sing the technique helps us," id. § 404.1520a(a), with "us" referring to the SSA. Rabbers, 582 F.3d at 656. Reasoning primarily from this one textual hook, the court decided that the special technique is a procedure designed solely to aid the ALJ. Id. The Sixth Circuit therefore concluded that the special technique

---

[5] Compare Wells v. Colvin, 727 F.3d 1061, 1065 & n.3, 1068–71 (10th Cir. 2013) (failure to follow the special-technique regulation requires remand if claimant has medically determinable mental impairments); Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 726 (9th Cir. 2011) (same); Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005) (same), and Montgomery v. Shalala, 30 F.3d 98, 100 (8th Cir. 1994) (same with predecessor regulation), with Kohler v. Astrue, 546 F.3d 260, 269 (2d Cir. 2008) (leaving "open the possibility that an ALJ's failure to adhere to the regulations' special technique might under other facts be harmless" but concluding that the record before it could not support such a finding), and Pepper v. Colvin, 712 F.3d 351, 366–67 (7th Cir. 2013) (can be harmless error); Rabbers v. Comm'r Soc. Sec. Admin., 582 F.3d 647, 661 (6th Cir. 2009) (same). Notably, in an unpublished case considering the predecessor of the current regulation, this court found reversible error where the ALJ failed to follow the special technique. Long v. U.S. Dep't of Health & Human Servs., No. 88-3651, 1990 WL 64793 at *4 (4th Cir. 1990) (per curiam) (unpublished).

11

could not also provide (1) a mandatory process designed to confer procedural benefits on claimants or (2) a necessary component to establish a record for possible judicial review. See id. at 655–57.

While we agree with the Sixth Circuit that the language of the special-technique regulation guides our inquiry, we disagree on the import of that language. The special-technique regulation's plain language describes what the SSA must do. The regulation states that the SSA "will document application of the technique in the decision," 20 C.F.R. § 404.1520a(e) (emphasis added), and its subsections all say what the decision maker "must" include or document, e.g., id. § 404.1520a(e)(3) (noting that "the determination must document application of the technique"). Therefore, the plain language of the special-technique regulation militates against the holding that the special-technique regulation offers only nonbinding guidance for the benefit of the ALJ. See Rabbers, 582 F.3d at 664–65 (Holschuh, J., dissenting in part, and concurring in part).

Moreover, that the SSA codified the special-technique process in a regulation contradicts the argument that the SSA sought only to offer decision makers nonbinding guidance. The SSA knows how to issue nonbinding policy statements and guidance documents. See, e.g., Social Security Administration, Program Operations Manual System (2016). Explaining how an agency wants

12

its decision makers to apply a regulation is one purpose of such nonbinding guidance. See Cmty. Nutrition Inst. v. Young, 818 F.2d 943, 949 (D.C. Cir. 1987) (per curiam). In issuing nonbinding guidance, agencies need not undergo the laborious and demanding requirements of promulgating a regulation, nor must they publish this type of guidance in the Federal Register. Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 173 (2007). In establishing its special-technique process for evaluating and documenting mental impairments, the SSA did not choose to issue nonbinding policy guidance, but instead chose the much more arduous process of promulgating and publishing a regulation with mandatory language. We cannot conclude that the SSA codified the special-technique process simply for the benefit of ALJs. See id. at 172–73.

Furthermore, the weight of authority suggests that failure to properly document application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review. See, e.g., Kohler v. Astrue, 546 F.3d 260, 267 (2d Cir. 2008); see also Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015) (finding reversible error where ALJ failed to employ a parallel special-technique regulation for assessing supplemental security income benefits claims). Without documentation of the special technique, it is difficult to discern how the ALJ treated

13

relevant and conflicting evidence. See Mascio, 780 F.3d at 637 (refusing to hold that ALJ's lack of reasoning constituted harmless error "[b]ecause we are left to guess about how the ALJ arrived at his conclusions" regarding an RFC assessment); Myers v. Califano, 611 F.2d 980, 983 (4th Cir. 1980).

"Administrative determinations are required to be made in accordance with certain procedures which facilitate judicial review." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). We cannot fill in the blanks for the ALJ in the first instance. Failure to document application of the special-technique regulation constitutes error.

2.

Although such error may be harmless error in some cases, this is not one of them. Based on the findings of Dr. Horn, the ALJ concluded that Patterson had the severe mental impairment of borderline intellectual functioning, but also found that this impairment did not meet or equal a listed impairment. In so deciding, the ALJ noted other evidence that is admittedly pertinent to his conclusions, but he did not address conflicting evidence, or explain away contrary findings of other doctors in a comprehensive manner. Looking at the ALJ's decision, the most we can say is that he appears to have at least partially examined the correct evidence, and began the correct evaluation.

14

But the special-technique regulation requires more, see supra Part II.A.1, and we hesitate to declare the error here harmless because it implicates the validity of so many of the ALJ's conclusions. We cannot affirm the ALJ's evaluation of Patterson's mental impairment because his decision did not explain how he weighed all relevant evidence: he did not rate Patterson's four areas of functional limitation listed in § 404.1520a(c)(3) according to the prescribed scale, nor did he explain how he reached his conclusions about the severity of the mental impairment. 20 C.F.R. §§ 404.1520a(c), 404.1520a(d). For example, on this record, the IQ score is a red flag that the ALJ should have analyzed in greater depth before summarily concluding that Patterson's condition met none of the listed impairments. Likewise, because we cannot review the ALJ's mental-impairment evaluation, we cannot say that he properly assessed Patterson's RFC. 20 C.F.R. § 404.1520a(c)(3); Mascio, 780 F.3d at 637. And because we cannot gauge the propriety of the ALJ's RFC assessment, we cannot say that substantial evidence supports the ALJ's denial of benefits. See Meyer, 662 F.3d at 707; Mascio, 780 F.3d at 636. Harmonizing conflicting evidence and bolstering inconclusive findings requires credibility determinations that we cannot make; these exercises

fall outside our scope of review.  See Mascio, 780 F.3d at 637–40.[6]

Put simply, "[t]he ALJ's lack of explanation requires remand."  Id. at 640.  Normally, our opinion would end here, and we would not go beyond ordering the ALJ to apply the regulation that it failed to observe.  Here, however, in the interest of judicial efficiency, we direct the ALJ to provide a more detailed explanation of any evaluation of applicable Listings, including Listing 12.05, and Patterson's treating physician's opinion in determining the type and severity of Patterson's mental impairment.  We also exhort him to more fully define Patterson's RFC, which will obviate the concerns Patterson raises on appeal about the adequacy of the ALJ's definition of the sit/stand option in assessing her ability to work.

## III.

We do not take a position on the merits of Patterson's application for disability benefits.  Instead, the dispute here arises from a problem that has become all too common among administrative decisions challenged in this court--a problem

---

[6] Importantly, in articulating its harmless-error exception in Rabbers, the Sixth Circuit noted that an ALJ's failure to follow the special technique likely could not be reviewed for harmless error where the record contained "conflicting or inconclusive evidence."  582 F.3d at 657.  That is precisely what we have here.

16

decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work.  The ALJ did not do so here, and this error rendered his decision unreviewable.  See Kohler, 546 F.3d at 267.

On remand, the ALJ should follow the dictates of all applicable regulations.  Reaching a decision in a well-reasoned and documented fashion serves multiple purposes.  It provides an appropriate record for review.  It also accords a claimant's arguments the procedure and respect they deserve.  And of course, providing comprehensive review of a claimant's arguments is in the SSA's best interest--in the instant case, providing such review in a well-documented manner would allow a court to readily determine the merits of Patterson's other arguments related to the ALJ's (1) evaluation of a particular Listing, (2) consideration of her treating physician's opinion, and (3) definition of her sit/stand option in formulating her RFC assessment.  For the reasons stated above, we reverse the district court's order with instructions to remand to the ALJ for appropriate review of Patterson's mental impairment.

REVERSED AND REMANDED WITH INSTRUCTIONS