**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-1812**

GEORGIA DARLENE TOWERY,

Plaintiff - Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Graham C. Mullen, Senior District Judge.  (3:22-cv-00470-GCM)

Submitted:  June 12, 2024                    Decided:  August 30, 2024

Before WILKINSON and KING, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Karl E. Osterhout, OSTERHOUT BERGER DISABILITY LAW, Oakmont, Pennsylvania, for Appellant.  Brian C. O'Donnell, Associate General Counsel, David E. Somers, III, Special Assistant United States Attorney, David N. Mervis, Senior Attorney, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland; Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Georgia Darlene Towery appeals the district court's order affirming the Commissioner's denial of Towery's application for disabled widow's benefits. On appeal, Towery asserts that the Administrative Law Judge ("ALJ") erred in determining Towery's residual functional capacity ("RFC"). We affirm.

We review the ALJ's decision "only to determine if it is supported by substantial evidence and conforms to applicable and valid regulations." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). Accordingly, we "must uphold the ALJ's decision if the ALJ applied correct legal standards and if the factual findings are supported by substantial evidence." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 382-83 (4th Cir. 2021) (internal quotation marks omitted). In this context, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (internal quotation marks omitted). "Though the threshold for such evidentiary sufficiency is not high, it requires that more than a mere scintilla of evidence support the ALJ's findings." *Dowling*, 986 F.3d at 383 (internal quotation marks omitted).

This court does "not reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ in reviewing for substantial error." *Shelley C.*, 61 F.4th at 353 (cleaned up). "Rather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, we defer to the ALJ's decision." *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (cleaned up). We do not, however, "reflexively rubber-stamp an ALJ's findings," *Dowling*, 986 F.3d at 383 (internal quotation

2

marks omitted), and, to enable meaningful judicial review, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence," *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013); *see also Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017) (explaining that "the ALJ must build an accurate and logical bridge from the evidence to his conclusion[s]" (internal quotation marks omitted)).

A claimant's RFC "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *See Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(1)).  In determining a claimant's RFC, an ALJ must evaluate the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, meaning 8 hours a day, for 5 days a week, or an equivalent work schedule." *Rogers v. Kijakazi*, 62 F.4th 872, 880 (4th Cir. 2023) (internal quotation marks omitted).  "The ALJ's assessment must include a discussion of the individual's abilities on that basis, and must be based on all of the relevant evidence in the case record." *Id.* (internal quotation marks omitted).

On appeal, Towery first argues that the ALJ erred by failing to place a limitation of a "low stress" work environment in Towery's RFC, despite the fact that two consulting doctors noted that Towery does not do well with stress.  Because the ALJ found these doctors' opinions persuasive, Towery claims error in the lack of an explanation for omission of the "low stress" requirement.

However, the ALJ's RFC noted that Towery could only perform jobs with simple instructions that required simple, work-related decisions.  The ALJ further stated that

3

Towery could only occasionally deal with supervisors, never deal with public, and only occasionally deal with changes in a routine work setting. The RFC also contained a limitation permitting Towery to be off-task about 10% of the work day.

Towery does not explain why this description does not adequately describe a low-stress work environment. *See Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017) (recognizing that appropriate low-stress job would require "no public contact," "non-production jobs" with simple tasks (internal quotation marks omitted)). The ALJ is not required to use specific words when determining the RFC, and as such, the mere failure to include the words "low stress" is not error. In fact, given that different people will find different circumstances stressful, the ALJ's RFC was more individualized than simply requiring a low-stress job. That is, the ALJ noted the specific types of interactions that Towery could handle. Notably, Towery does explain how the RFC should be altered to describe an appropriate low-stress environment for Towery (besides just including the term "low stress").

Because the ALJ's RFC describes an appropriate low-stress environment for Towery, there was no conflict with the doctors' opinions. Moreover, even if the ALJ somehow erred by failing to include the specific requirement of a low-stress work environment in the RFC, Towery fails to argue that such an addition to her RFC would have changed the disability determination. As such, any error was merely harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (noting that harmless-error standard is applicable in administrative cases).

4

Next, Towery asserts that the ALJ erred by rejecting Rebecca Reavis, PhD's opinion. After a consultative examination, Reavis found that Towery had an extreme impairment in her "[a]bility to respond appropriately to usual work situations and to changes in a work routine/tolerate the stress and pressure associated with day-to-day work activity." (J.A. 1380).* In describing this conclusion, Reavis explained that Towery was "overwhelmed with day-to-day stress at home" and, in a work setting, "she is likely to become overwhelmed very quickly, which would cause her to have difficulty completing a full work shift." (J.A. 1380). Reavis also found that Towery was likely to lack motivation and energy and might call in sick frequently.

The ALJ found Reavis's determination that Towery had an extreme impairment in the ability to respond appropriately to usual work situations unpersuasive because Towery was able to perform "serial 3s," her responses to recent and remote memory questions were appropriate, and her mental status exams were generally unremarkable. Towery contends first that she, in fact, incorrectly responded to the serial 3s and recent and remote memory questions. However, the record refutes Towery's contention. Towery got four out of five "serial 3s" (counting backwards by 3s from 18) correct, and she immediately and appropriately responded to all recent and remote memory questions.

Towery next asserts that these tests are an irrelevant basis on which to reject Reavis' findings that Towery had an extreme inability to tolerate stress in the workplace. However, given that testing can be stressful, an applicant's performance on memory and other tests

---

* Citations to "J.A.__" refer to the Joint Appendix filed by the parties in this appeal.

5

is clearly relevant to the applicant's ability to perform under certain amounts of stress. Towery also contends that two consulting doctors found that Reavis's opinion regarding Towery's likelihood to be overwhelmed and to call in sick based on low energy and motivation was supported by her objective findings. While this is true, both doctors noted that Reavis had seen Towery only once and that the totality of the evidence supported only severe, rather than extreme, limitations.

Finally, Towery contends that Reavis's opinion was consistent with Towery's mental examinations and her subjective complaints. Importantly, the ALJ did not reject Reavis's opinion outright. Much of Reavis's opinion was consistent with the ALJ's conclusions. The only portion of Reavis's opinion that the ALJ found unpersuasive was her conclusion that Towery had an "extreme" limitation. Thus, the issue was not whether Towery would have difficulty dealing with stress in the workplace; instead, the issue was the magnitude of this difficulty. The ALJ found that the record, as a whole, did not support the "extreme" limitation that Reavis found after just one examination of Towery.

We find that the ALJ's determination is supported by substantial evidence. First, both consulting doctors reviewed Reavis's opinion as well as Towery's medical records and concluded that, while severe, Towery's limitations were not extreme. Second, Towery's records show that, when she was compliant with her medication and attending therapy, she felt better and experienced less anxiety. Third, two of her treating medical professionals recommended more productive activity. Fourth, Towery's testimony before the ALJ and her statements to Reavis complained of more severe symptoms than those she generally reported to her treating medical professionals. Fifth, Towery's daily activities

supported a conclusion that she was not disabled.  Specifically, Towery helped take care of her sister, who was on oxygen and disabled.  Although Towery's exact tasks were not explained, caregiving requires at least a baseline level of responsibility, judgment, and concentration.  She also handled her own finances, did light housework and shopping, and engaged in hobbies such as reading and poetry.  Sixth, in contrast to Reavis's findings, Towery's medical records reflect that her most severe triggers were related to specific situations (like a break-up or a death in the family) rather than her day-to-day activities and that she did not regularly exhibit or report a lack of motivation or energy.  All of this evidence supports the ALJ's determination that Towery did not suffer from an extreme impairment.

Accordingly, we affirm the district court's order upholding the Commissioner's denial of Towery's application for benefits.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*