**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-1830**

───────────────

BARRY L. SCHARBROUGH, c/o Mary Ann Scharbrough,

Plaintiff - Appellant,

v.

COMMISSIONER, SOCIAL SECURITY,

Defendant - Appellee.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. Brendan A. Hurson, Magistrate Judge.  (1:22-cv-02421-BAH)

───────────────

Submitted:  August 12, 2024                    Decided:  October 2, 2024

───────────────

Before THACKER and BENJAMIN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

───────────────

Affirmed by unpublished per curiam opinion.

───────────────

**ON BRIEF:** Andrew N. Sindler, LAW OFFICES OF ANDREW N. SINDLER, LLC, Severna Park, Maryland, for Appellant.  Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland; Brian C. O'Donnell, Associate General Counsel, David N. Mervis, Office of Program Litigation, Office of the General Counsel, Erica Adams, Special Assistant United States Attorney, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Barry L. Scharbrough[1] appeals the district court's order affirming the Social Security Administration's ("SSA") decision to deny his application for disability benefits. On appeal, Scharbrough makes numerous assertions of error by both the Administrative Law Judge ("ALJ") and the district court. We affirm.

"We review an SSA decision only to determine if it is supported by substantial evidence and conforms to applicable and valid regulations." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). Accordingly, we "must uphold the ALJ's decision if the ALJ applied correct legal standards and if the factual findings are supported by substantial evidence." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 382-83 (4th Cir. 2021) (internal quotation marks omitted). In this context, "[s]ubstantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. Though the threshold for such evidentiary sufficiency is not high, it requires that more than a mere scintilla of evidence support the ALJ's findings." *Id.* at 383 (cleaned up). We do not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ" in evaluating whether a decision is supported by substantial evidence; "[r]ather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," we "defer to the ALJ's decision." *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (cleaned up).

---

[1] Scharbrough is deceased. His widow, Mary Ann Scharbrough, pursues this case in his place. This opinion refers to Barry Scharbrough as "Scharbrough" throughout and, for ease and clarity, addresses the arguments as if Scharbrough himself was making them.

The Commissioner uses a five-step process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4) (2022). "Steps 1 through 3 ask: (1) whether the claimant is working; (2) if not, whether []he has a severe impairment; and (3) if []he does, whether the impairment meets or equals a listed impairment." *Patterson*, 846 F.3d at 659 (internal quotation marks omitted). "If the claimant fails at step [3], the ALJ must then determine the claimant's residual functional capacity ("RFC")," which is the most a claimant can still do despite his physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017). "After determining the claimant's RFC, the ALJ proceeds to step [4]" and determines whether the claimant is "able to perform his past work." *Id.* at 255 (internal quotation marks omitted). If the claimant is unable to perform his past work, "the ALJ finishes at step [5], where the burden shifts to the Commissioner." *Id.* To withhold benefits, "the Commissioner must prove . . . that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's RFC, age, education, and work experience." *Id.* (cleaned up).

On appeal, Scharbrough argues that the ALJ incorrectly analyzed whether and how much Scharbrough's pain impacted his ability to work. The ALJ noted that Scharbrough's statements about the intensity and limiting effects of his conditions were inconsistent. The ALJ relied upon his stated daily activities, his conservative treatment, improvement of symptoms, and failure to follow up as directed. The ALJ carefully reviewed Scharbrough's medical records and noted the dearth of complaints of pain during the relevant time period. The ALJ also found that the generally normal or mild testing/imaging findings did not support a finding of debilitating pain.

3

Scharbrough first contends that it was inappropriate for the ALJ to rely on the imaging results because it is "well settled in the medical community" that MRI's are required to diagnose the severity of arthritic conditions and no MRI's were done on Scharbrough's relevant body parts. (Appellant's Br. (ECF No. 19) at 25). In support, Scharbrough cites to a medical journal and cases involving fibromyalgia and migraine headaches. (*Id.* at 25-26). Scharbrough contends that the ALJ improperly rejected his complaints of severe pain based upon "irrelevant" testing/imaging findings.

However, Scharbrough presents no legal support for his conclusions that x-ray results and physician testing are irrelevant in cases of arthritis or back, neck, or foot pain and that the severity of back, neck, and/or foot conditions are not detectable by such methods. *See Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996) (noting that evaluation of the limiting effects of claimant's pain must take into account "medical signs, and laboratory findings"). Further, even if Scharbrough is correct that these tests were of little probative value, the ALJ appropriately relied on Scharbrough's own statements generally denying pain during the relevant time period. In support of his contentions that his pain was more severe than determined by the ALJ, Scharbrough points to evidence outside the relevant time period, complaints during the relevant time period that were few and far between, and the Department of Veterans Affairs's ("VA") conclusions. However, the ALJ explicitly considered this evidence but found it outweighed by the contrary evidence, a finding that is not generally reviewable by this court.

Next, Scharbrough argues that the ALJ failed to consider how his pain would affect his attention and concentration. Again, however, Scharbrough points to no actual evidence

4

of attention or concentration limitations; instead, he relies upon a "pure common sense" argument that a claimant with any level of pain will have some interference with attention, focus, persistence or pace. (Appellant's Br. at 28-29). However, in his disability report, Scharbrough himself denied any mental component to his conditions. While Scharbrough and his wife testified that his medication rendered him essentially nonfunctional, his treatment records do not show that he complained of attention or concentration issues, and his treating physicians did not note any limitations on examination. As such, we find that the ALJ's conclusions were based on substantial evidence and that the ALJ did not err in analyzing either Scharbrough's complaints of pain or any possible limitations in attention or concentration.

Next, Scharbrough asserts that the ALJ erred by improperly relying on the fact that Scharbrough was treated conservatively. Scharbrough contends that there is no "invasive treatment available and/or indicated for these conditions." (Appellant's Br. at 31). Again, Scharbrough does not cite to any evidence supporting this contention. Scharbrough was treated at various times with pain medication, heating pads, foot massages, night splints, cortisone injections (in his feet) and orthotics. However, such treatments have been recognized as conservative. *See, e.g., Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018) (recognizing that "injection therapies" and pain medications were "conservative pain management approaches" and discussing back surgery for degenerative disc disease); *Singh v. Apfel*, 222 F.3d 448, 450 (8th Cir. 2000) (noting that nerve block injections were a conservative modality and that epidural steroid injections and surgery were available to relieve back and neck pain); *see also Craig*, 76 F.3d at 595 (noting that ALJ should consider

5

any medical treatment taken to alleviate pain). Accordingly, Scharbrough's assertions that no other treatments were available is unsupported, and the ALJ did not err by labelling his treatment as conservative.

Scharbrough also asserts that the ALJ improperly relied upon periods of normal findings or improvement when the full record reflected consistent and worsening symptoms. However, the only evidence cited by Scharbrough that supported a finding of consistent and worsening symptoms during the relevant time period was claimant's wife's testimony (given after the relevant time period). She asserted that Scharbrough's condition deteriorated prior to his date last insured and that he had difficulty sitting, standing, or walking for extended periods of time. She testified that Scharbrough increased his pain medication during that period and that the medication rendered him unable to function.

The ALJ rejected this testimony, noting that Scharbrough's own testimony, prior to his death, supported lesser limitations and was given closer in time to his date last insured. Thus, the ALJ found Scharbrough's testimony more reliable than his wife's later testimony. Moreover, contrary to Scharbrough's argument that the ALJ cherry-picked the record to find periods of improvement, the ALJ thoroughly discussed the medical evidence and testimony (including that on which Scharbrough relies), weighed that testimony, and made findings of fact and credibility determinations. These rulings are generally not reviewable by this court when they are, as here, supported by substantial evidence.

Scharbrough further asserts that the ALJ erred by relying upon his activities of daily living to discount his and his wife's testimony. Specifically, Scharbrough contends that the ALJ should not have considered Scharbrough's ability to sit through the hearing given

6

his testimony that he was stiffening and later testimony that he was unable to drive home. Scharbrough also avers that the record contains substantial evidence that his activities of daily living were either overstated, irrelevant to his ability to work, or caused excessive fatigue making prolonged work impossible.

However, the ALJ considered Scharbrough's January 2013 function report, which was closer in time to his date last insured than any of the hearing testimony. The ALJ noted that Scharbrough asserted that he had limitations in standing, sitting, or walking for more than short periods and that his medication caused slow reaction time and excessive drowsiness. The ALJ considered Scharbrough's testimony that he suffered from severe pain in his back, neck, and feet and that he also experienced stiffness and numbness. The ALJ explicitly considered Scharbrough's assertions that, while he could complete certain tasks, he could not do so for a prolonged period of time and often needed rest afterwards or was rendered nonfunctional by medication.

Nonetheless, the ALJ found that Scharbrough's limitations were not as severe as he and his wife alleged. In so doing, the ALJ noted that much of the testimony concerned limitations outside the disability period. The ALJ relied, in part, on Scharbrough's self-stated activities of daily living, finding them inconsistent with a determination of disability. The ALJ also noted that Scharbrough failed to attend a consultative examination and cancelled a recommended CT scan due to improved symptoms. The ALJ appropriately weighed this evidence and limited Scharbrough to a modest range of sedentary work without prolonged sitting, standing, or walking. Such a ruling was not legal error, and we do not reweigh the evidence on review. *See Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th

Cir. 2012) (finding failure to seek treatment or follow prescribed course of treatment relevant to disability finding); *Craig*, 76 F.3d at 585 (noting that daily activities are relevant in determining the severity of impairment); *Wall v. Astrue*, 561 F.3d 1048, 1068 (10th Cir. 2009) (explaining that "disability requires more than the mere inability to work without pain" (internal quotation marks omitted)); *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (finding ruling "logical" where ALJ found attending church, reading, watching television, house cleaning, laundry, visiting, feeding pets, cooking, and managing the household was inconsistent with complaints of excruciating pain); *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002) ("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.").

Next, Scharbrough challenges the inclusion in his RFC of a sit/stand option that required him to stand at least two times per hour for at least a couple of minutes while remaining on task. Scharbrough avers that such was error due to its ambiguity and because the ALJ failed to consider Scharbrough's pain when determining that he could remain on task. The ALJ posed a hypothetical to the vocational expert regarding an individual who "could stand or walk for two hours out of an eight hour day but for no more than 15 to 20 minutes at one time, could sit for six hours out of an eight hour work day, would need to stand up for a few minutes twice during the hour, at least twice during the hour while remaining on task." (J.A. 1227). Scharbrough did not object or seek to clarify the ALJ's questions or the expert's testimony, despite questioning the expert on other issues.

We conclude that the RFC was not ambiguous. The ALJ clearly described a baseline minimum number of times that Scharbrough would need to stand, but essentially provided an at-will requirement, permitting Scharbrough to change positions at his discretion so long as he could keep on task. The ALJ's RFC findings and hypothetical were consistent with an at-will sit-stand option, and no greater specificity was required.[2] Moreover, while Scharbrough argues in his brief that changing positions would not relieve his pain, he does not point to any evidence that his pain level was not improved by changing positions or that the resulting (presumably lower) pain level prevented him from remaining on task. In fact, in his hearing testimony (nearly two years after his date last insured), Scharbrough described the necessity for alternating between sitting and standing, averring that he could stand "less than an hour" before needing to sit and could sit for "probably about an hour" before needing to stand. (J.A. 150). Accordingly, we find no error in the ALJ's formulation of the RFC, which was actually more restrictive than Scharbrough's stated abilities a substantial period of time after his date last insured.

Scharbrough asserts that the ALJ erred by failing to consider his history of excessive absenteeism due to his medical conditions and his inability to work without numerous absences. Scharbrough contends that the ALJ should have considered the fact that he was fired from his last job because he was unable to work due to his medical conditions. While

---

[2] Scharbrough also argues that the limitation violated Social Security Ruling 96-9p, which provides that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." However, the Ruling only applies to analysis at Step Five. Because the instant case was decided at Step Four (ability to perform past relevant work), the Ruling is inapplicable.

9

Scharbrough's wife did testify to this, the ALJ noted that Scharbrough himself testified that he was fired because he was absent for an extended period of time with walking pneumonia and he could not meet his production requirements.[3] Given Scharbrough's own testimony and the fact that there is no evidence that the walking pneumonia was related to his allegedly disabling conditions, the ALJ did not err in failing to discuss Scharbrough's absenteeism at his last job. Moreover, the ALJ did not err in failing to analyze how often Scharbrough's medical conditions would require him to be absent moving forward, given that Scharbrough failed to provide any evidence of frequent or unplanned medical treatment and that there was a lack of persuasive evidence of frequent, debilitating pain during the relevant time period.

Finally, Scharbrough contends that the district court erred in not remanding for many of the errors discussed above. However, given that such an argument assumes ALJ error, the claims are without merit. Finally, Scharbrough asserts that the district court erred in not finding that the ALJ violated the treating physician rule. However, this claim was not raised below, and as such, we decline to address it. *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (noting that claims raised for the first time on appeal generally will not be considered absent exceptional circumstances of plain error or fundamental miscarriage of justice).

---

[3] Scharbrough claims that this testimony is not reliable or accurate because the ALJ cut him off. However, a review of the record reveals that the ALJ interrupted Scharbrough when he was speaking about the production requirements of his job and how a person needed to be physically present, not when he was explaining his illness or the reason for his firing.

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*